UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

DANIELLE R. HALEY,

        Plaintiff,

    v.                              CAUSE NO. 3:20-CV-282 DRL

ANDREW M. SAUL,
Commissioner of the Social Security
Administration,

        Defendant.

OPINION AND ORDER

Danielle R. Haley appeals from the Social Security Commissioner's final judgment denying her disability insurance benefits. Ms. Haley requests remand of her claim for further consideration. Having reviewed the underlying record and the parties' arguments, the court remands the Commissioner's decision.

BACKGROUND

Ms. Haley suffers from a variety of physical and mental health impairments. Her severe physical impairments include Ehlers-Danlos syndrome, fibromyalgia, and obesity [R. 12]. She also suffers from the non-severe physical impairments of diabetes, obstructive sleep apnea, hypothyroidism, and postural orthostatic tachycardia (POTs) [R. 13]. Ms. Haley also suffers from the non-severe mental impairments of anxiety and depression [R. 13].

Ms. Haley filed a Title II application for benefits on April 18, 2017, alleging disability beginning June 1, 2016 [R. 10]. Her application was denied initially on August 22, 2017, and again upon reconsideration on January 4, 2018 [*Id.*]. Her claims were heard by an Administrative Law Judge (ALJ) in a hearing on February 12, 2019 [*Id.*]. In an April 2, 2019, decision, the ALJ denied Ms. Haley's

petition on the basis that she could not show that she was disabled as defined by the Social Security Act [R. 7-8, 20].

The ALJ found that Ms. Haley has the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. § 404.1567(b) with the following limitations: she can frequently reach with both upper extremities and frequently handle and finger with both hands [R. 15]. She can occasionally balance, stoop, crouch, and climb ramps/stairs [*Id.*]. She can never work at unprotected heights or around dangerous machinery with moving mechanical parts, and she cannot operate a motor vehicle as part of her work-related duties [*Id.*]. Additionally, every sixty minutes, the claimant must be allowed to shift positions or alternate between sitting and standing for at least one to two minutes at a time while remaining on task [*Id.*]. The ALJ found that Ms. Haley could perform her past relevant work as a music teacher, a secondary teacher, and a receptionist [R. 18]. Additionally, the ALJ found that she could perform a significant number of jobs in the national economy [R. 20]. This decision became final when the Appeals Council denied Ms. Haley's request for review [R. 1].

## STANDARD

The court has authority to review the Council's decision under 42 U.S.C. § 405(g); however, review is bound by a strict standard. Because the Council denied review, the court evaluates the ALJ's decision as the Commissioner's final word. *See Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). The ALJ's findings, if supported by substantial evidence, are conclusive and nonreviewable. *See Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence is that evidence which "a reasonable mind might accept as adequate to support a conclusions," *Richardson v. Perales*, 402 U.S. 389, 401 (1971), and may well be less than a preponderance of the evidence, *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007) (citing *Richardson*, 402 U.S. at 401). If the ALJ has relied on reasonable evidence and built an "accurate and logical bridge from the evidence to conclusion," the decision must stand. *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014). Even if "reasonable minds could differ" concerning the

2

ALJ's decision, the court must affirm if the decision has adequate support. *Simila v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009) (quoting *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008)).

## DISCUSSION

When considering a claimant's eligibility for disability benefits, an ALJ must apply the standard five-step analysis: (1) is the claimant currently employed; (2) is the claimant's impairment or combination of impairments severe; (3) do her impairments meet or exceed any of the specific impairments listed that the Secretary acknowledges to be so severe as to be conclusively disabling; (4) if the impairment has not been listed as conclusively disabling, given the claimant's residual function capacity, is the claimant unable to perform her former occupation; (5) is the claimant unable to perform any other work in the national economy given her age, education, and work experience. 20 C.F.R. § 404.1520; *Young v. Secretary of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). The claimant bears the burden of proof until step five, when the burden shifts to the Commissioner to prove that the claimant can perform other work in the economy. *See Young*, 957 F.2d at 389.

Ms. Haley challenges the ALJ's conclusion that she is not totally disabled. She advances a laundry list of arguments that at times overlap. The court addresses two arguments today: her contention that the ALJ erred in considering her subjective symptoms, and her contention that the ALJ didn't consider her obesity in combination with her other impairments in making an RFC determination.

A.      *Subjective Symptoms.*

Ms. Haley says the ALJ erred in analyzing her subjective symptoms, specifically her pain related to Ehlers-Danlos Syndrome (EDS). An ALJ follows a two-step process to evaluate a claimant's subjective complaints. First, the ALJ determines whether the claimant has a medically determinable impairment that could reasonably be expected to produce the claimant's symptoms. 20 C.F.R. § 404.1529(a-b); SSR 16-3p, 2016 SSR LEXIS 4, 3 (Mar. 16, 2016). Second, once the existence of a

3

medically determinable impairment that could reasonably be expected to produce the claimant's symptoms is established, the ALJ evaluates the intensity and persistence of the claimant's symptoms to determine the extent to which they impose work-related functional limitations. 20 C.F.R. § 404.1529(a). Because an ALJ is in the best position to evaluate the credibility of a witness, the ALJ's consideration of a claimant's symptom testimony is entitled to "special deference." *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000). If an ALJ's determination is grounded in the record and he articulates his analysis of the evidence "at least at a minimum level," *Ray v. Bowen*, 843 F.2d 998, 1002 (7th Cir. 1988) (citation omitted), creating "an accurate and logical bridge between the evidence and the result," *Ribaudo v. Barnhart*, 458 F.3d 580, 584 (7th Cir. 2006) (citation omitted), his determination will be upheld unless it is "patently wrong," *Powers,* 207 F.3d at 435; *see also Ray v. Berryhill*, 915 F.3d 486, 490 (7th Cir. 2019) (it is a "rare case in which the claimant can overcome the 'considerable deference' [the court] afford[s] such findings unless they are 'patently wrong'") (quoting *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009)); *Carradine v. Barnhart*, 360 F.3d 751, 754 (7th Cir. 2004) (remanding an ALJ's consideration of a claimant's symptom testimony because the ALJ's decision was based on "serious errors in reasoning rather than merely the demeanor of the witness").

Federal regulation lists many factors an ALJ should consider when evaluating a claimant's symptoms, including pain. *See* 20 C.F.R. § 416.929(c). These factors include the objective medical evidence; the claimant's prior work record; statements made by the claimant about her symptoms; the claimant's daily activities; the location, duration, frequency, and intensity of the claimant's symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication taken for symptoms; treatment for symptoms (other than medication); and any other measures used to relieve symptoms. 20 C.F.R. § 416.929(c)(1-3).

In analyzing Ms. Haley's subjective symptoms, the ALJ found that while her impairments could reasonably be expected to cause the alleged symptoms, "her statements concerning the intensity,

4

persistence, and limiting effects of these symptoms were not entirely consistent with the medical and other evidence in the record" [R. 16]. The ALJ found that Ms. Haley's physical examinations were "generally unremarkable overall, often describing normal gait/balance, intact sensation, 5/5 extremity strength, normal muscle tone, and normal musculoskeletal range of motion" [R. 17]. Further, the ALJ found her complaints of joint pain and weakness to be unpersuasive, as "multiple records noted no evidence of muscle spasms, edema, swelling, crepitus, effusion, subluxation, or laxity" [*Id.*]. The ALJ relied on "generally unremarkable" diagnostic tests, including CT scans, a brain MRI, and a left hip MRI. [*Id.*].

Ms. Haley asserts that the ALJ impermissibly cherry-picked the medical evidence and relied on objective evidence in dismissing her subjective symptoms. As an initial matter, the ALJ's dismissal of Ms. Haley's subjective symptoms seems to reflect some lack of understanding of EDS. Ehlers-Danlos Syndromes are a group of rare genetic conditions that affect connective tissue, and connective tissues affect the skin, tendons, ligaments, blood vessels, internal organs, and bones.[1] There are 13 types of EDS, but hypermobile (which Ms. Haley has) is the most common.[2] Hypermobile EDS symptoms include joint pain and deformity, muscle pain, nerve pain, pelvic floor weakness, nerve disorders (neuropathy), loose or unstable joints, clicking joints, fatigue, digestive problems, dizziness and increased heart rate with position changes, stretchy and fragile skin, poor wound healing, congenital hip dislocations, and poor muscle tone.[3] The most common comorbidities include sluggish stomach, sluggish large bowel, food intolerance concerns, autonomic disturbances of heart rate and

---

[1] National Health Service (UK), *Ehlers-Danlos syndromes*, https://www.nhs.uk/conditions/ehlers-danlos-syndromes (last visited July 29, 2021).

[2] The Ehlers-Danlos Society, *What are the Ehlers-Danlos Syndromes?*, https://www.ehlers-danlos.com/what-is-eds/ (last visited July 29, 2021).

[3] National Health Service (UK), *Ehlers-Danlos syndromes*, https://www.nhs.uk/conditions/ehlers-danlos-syndromes (last visited July 29, 2021)); The Ehlers-Danlos Society, *What are the Ehlers-Danlos Syndromes?*, https://www.ehlers-danlos.com/what-is-eds/ (last visited July 29, 2021).

blood pressure, bowel and bladder function, anxiety, depression, and organ/systemic inflammation related to mast cell activation.[4]

In concluding that Ms. Haley's pain was not disabling, the ALJ dismissed Ms. Haley's pain based on findings that either mischaracterize a medical note, or otherwise fail to consider how EDS presents clinically. An "ALJ may not discount a claimant's credibility just because her claims of pain are unsupported by significant physical and diagnostic examination results." *Pierce v. Colvin*, 739 F.3d 1046, 1049-50 (7th Cir. 2014). Here, the ALJ impermissibly endeavored to rely on just objective medical evidence, but then stretched the evidence in his findings without considering the other record evidence.

The ALJ cited to multiple pages in the record to support his finding that Ms. Haley's symptoms were not as disabling as alleged—because her physical examinations were "generally unremarkable overall, often describing normal gait/balance, intact sensation, 5/5 extremity strength, normal muscle tone, and normal musculoskeletal range of motion" [R. 17]. In one note, while Ms. Haley was observed to have normal range of motion, normal strength and tone, no instability, no swelling, and no subluxation or laxity in her right hip, she was not complaining of pain in her right hip [R. 337]. Instead, Ms. Haley reported significant pain in her left hip. Her left hip pain was supported at that visit by a finding that it "clicks and pops regularly," and her doctor believed she had an impingement in her left hip [R. 336-37]. The ALJ's finding that her pain was not as severe as alleged due to normal findings in her right hip ignores the fact that she presented with left hip pain. Additionally, at the same visit, Ms.

---

[4] The Ehlers-Danlos Society, *What are the Ehlers-Danlos Syndromes?*, https://www.ehlers-danlos.com/what-is-eds/ (last visited July 29, 2021).

Haley had a positive Trendelenberg's Sign,[5] positive Log Roll Testing,[6] a positive hip impingement sign, a positive FABERS[7] test, and a positive bicycle test,[8] all of which support Ms. Hayley's reports of left hip pain [R. 337].

The ALJ also cited to a medical note to support the finding that Ms. Haley's physical examinations show normal findings; however, the medical note does not indicate normal findings [R. 17, 340]. Instead, the medical record shows that Ms. Haley was suffering from fatigue, abdominal pain, joint pain, anxiety, stress, frequent crying and irritability, and hip pain [R. 340].

Other treatment notes that the ALJ cites to in finding normal gait were behavior health visits focusing on Ms. Haley's psychiatric impairments [R. 368, 502, 530, 533]. Naturally a mental health examiner would not focus on Ms. Haley's physical impairments, especially her gait, during an examination regarding her depression and anxiety. These notes offer no support or logical bridge for the ALJ's conclusion.

The ALJ also relied on other physical exams to support his finding of normal physical examinations [R. 17]. However, for most of these examinations, the ALJ relied on standard boilerplate language that the physician includes in each examination. This information is often contradicted by the narrative notes. For instance, at the examinations the ALJ relied on, the narrative notes show the

---

[5] A positive Trendelenberg sign indicates weakness in the hip abductor muscles, it and can be associated with various hip abnormalities. *See* Physiopedia, *Trendelenburg Sign*, https://www.physio-pedia.com/Trendelenburg_Sign (visited July 29, 2021).

[6] The log roll test is "the single most specific test for hip pain." MedSchool, *Log Roll Test*, https://medschool.co/exam/hip/log-roll-test (last visited July 29, 2021).

[7] The FABER test is used to identify the presence of hip pathology and is a passive screening tool for musculoskeletal pathologies. *See* Physiopedia, *FABER Test*, https://www.physio-pedia.com/FABER_Test (last visited July 29, 2021).

[8] A bicycle test can be used to diagnose lumbar spinal stenosis. *See* ScienceDirect, *Lumbar Spinal Stenosis*, https://www.sciencedirect.com/topics/medicine-and-dentistry/lumbar-spinal-stenosis (last visited July 29, 2021).

following: symptoms of cauda equina[9] [R. 477]; pelvic pain [R. 479]; joint pain [R. 578]; positive Trendelenberg's sign, positive log roll testing, positive hip impingement sign, positive FABERS test, and positive bicycle test [R. 578, 583, 681]; a tear in the left acetabular labrum, her left hip [R. 578]; tendinopathy in her left gluteus medius [R. 578]; osteitis pubis[10] [R. 578]; popping and clicking in her left hip [R. 582]; possible left femoral neuropathy [R. 619]; muscle weakness in the lower extremities [R. 627]; heart palpitations [R. 627]; abdominal pain [R. 628]; joint pain and swelling [R. 628]; moderate tenderness in the anterior groin [R. 676]; labral tear possibly folded into the joint [R. 676)] moderate tenderness in anterior hip and groin [R. 681]; instability of the right shoulder [R. 681], patellofemoral pain syndrome of the right knee [R. 681]; and an acetabular labrum tear on the left affecting her daily activities and referred to surgery [R. 681]. The ALJ didn't acknowledge any of these issues in finding Ms. Haley's physical examinations to be mostly normal.

Moreover, the ALJ didn't consider that pain cannot be measured by objective medical tests. *See Carradine v. Barnhart*, 360 F.3d 751, 754 (7th Cir. 2004) ("Pain is always subjective in the sense of being experienced in the brain."); *Cooper v. Casey*, 97 F.3d 914, 917 (7th Cir. 1996) ("Pain, fatigue, and other subjective, non-verifiable complaints are in some cases the only symptoms of a serious medical condition.") (citations omitted). There is no specific objective test to diagnose hypermobile EDS.[11] Instead, a physician considers various criteria, which includes a mixture of objective observations,

---

[9] Cauda equina syndrome (CES) occurs when there is dysfunction of multiple lumbar and sacral nerve roots of the cauda equina nerves, a collection of nerves at the end of the spinal cord. *See* Am. Ass'n of Neurological Surgeons, *Cauda Equina Syndrome*, https://www.aans.org/en/Patients/Neurosurgical-conditions-and-treatments/cauda-equina-syndrome (last visited July 29, 2021).

[10] Osteitis pubis is inflammation where the right and left pubic bones meet at the lower front part of the pelvis. *See* Healthline, *Osteitis Pubic: What You Need to Know*, https://www.healthline.com/health/osteitis-pubis (last visited July 29, 2021).

[11] Nat'l Insts. of Health, *Hypermobile Ehlers-Danlos Syndrome*, https://rarediseases.info.nih.gov/diseases/2081/hypermobile-ehlers-danlos-syndrome (last visited July 29, 2021).

subjective reporting, and family history.[12] The law has viewed EDS as analogous to fibromyalgia, as fibromyalgia is a "complex medical condition characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissues that has persisted for at least 3 months." SSR 12-2p, 2012 LEXIS 1 (July 25, 2012); *Rogers v. Comm'r of Soc. Sec.* 486 F.3d 234, 248 (6th Cir. 2007); *Coffee v. Berryhill*, 2019 U.S. Dist. LEXIS 10383, 6 (N.D. Ind. Jan. 22, 2019). Similarly, EDS pain may not be indicated on any laboratory, x-ray, or physical findings. Yet the ALJ relied on over-extrapolated objective medical evidence in dismissing Ms. Haley's subjective allegations of pain related to her EDS. Doing so to dismiss Ms. Haley's subjective allegations of pain requires remand.

B.      *Obesity.*

Ms. Haley says the ALJ didn't consider her obesity in combination with her other impairments in making the RFC determination. The ALJ discussed Ms. Haley's obesity at step two, finding that "claimant's obesity, either alone or in combination with other impairments, is not of listing level severity. Specifically, as [evinced] by physical examinations describing normal gait, she retains the ability to ambulate effectively and her other listed severe impairments, although worsened by obesity, are not of listing level severity" [R. 15]. The only other discussion of Ms. Haley's obesity came in the RFC determination, when the ALJ found that her history of obesity in combination with her other impairments "supports limiting her to light work with additional postural limitations" [R. 18]. There seems to be no other discussion of Ms. Haley's obesity in the decision.

An ALJ must "consider the exacerbating effects of a claimant's obesity on her underlying conditions (even if the obesity is not itself a severe impairment) when arriving at a claimant's RFC." *Hernandez v. Astrue*, 277 F. App'x 617, 623-24 (7th Cir. 2008). Even when a claimant does not explicitly list obesity as an impairment in her application for disability, the ALJ still must evaluate how obesity impacts the claimant's overall condition if the ALJ was put on notice that obesity could be a relevant

---

[12] *Id.*

factor. *Clifford v. Apfel*, 227, F.3d 863, 873 (7th Cir. 2000); *see also* 20 C.F.R. § 404.1512(a) (stating that

an ALJ need only consider impairments about which he receives evidence.). Here, the ALJ was aware

of Ms. Haley's obesity and listed it as a severe impairment.

An ALJ must consider the credibility of a claimant's narrative of her limitations if her obesity

would have an effect on those limitations. *Gentle v. Barnhart* 430 F.3d 865, 868 (7th Cir. 2005). For

instance, obesity along with degenerative disc disease may make actions more painful than it would be

for a person who was either obese or suffering from degenerative disc disease but not both. *Id.* (citing

*Barret v. Barnhart*, 355 F.3d 1065, 1068 (7th Cir. 2004)). Rheumatoid arthritis, like EDS, is a connective

tissue disorder.[13] This circuit has held it error not to consider the impact of obesity on arthritis-related

pain. *Martinez v. Astrue*, 630 F.3d 693, 698-99 (7th Cir. 2011). Even if a claimant's "arthritis was not

particularly serious in itself, it would interact with her obesity to make standing for two hours at a time

more painful than it would be for a person who was either as obese as she or as arthritic as she but

not both." *Barrett v. Barnhart*, 355 F.3d 1065, 1068 (7th Cir. 2004); *see also* SSR 02-01p, 2002 SSR LEXIS

1, *17, 2002 WL 34686281, at *6 (Sept. 12, 2002) (stating "someone with obesity and arthritis affecting

a weight-bearing joint may have more pain and limitation than might be expected from the arthritis

alone.").

Though the ALJ provided an explanation for why he found that her obesity in combination

with other impairments didn't equal a listing, the ALJ didn't articulate the effects of her obesity on her

other impairments when making the RFC determination. The Commissioner asserts that the ALJ

"considered Plaintiff's obesity in assessing the RFC finding," [ECF 16 at 18], but the ALJ merely stated

that he considered Ms. Haley's obesity, without any analysis or discussion of the effects of her obesity

---

[13] Cleveland Clinic, *Connective Tissue Diseases*, https://my.clevelandclinic.org/health/diseases/14803-connective-tissue-diseases (last visited July 29, 2021); Mayo Clinic, *Ehlers-Danols Syndrome*, https://www.mayoclinic.org/diseases-conditions/ehlers-danlos-syndrome/symptoms-causes/syc-20362125 (last visited July 29, 2021).

on her other impairments. He mentioned that they worsened, but not how or to what extent. Such a boilerplate statement is not an adequate explanation or discussion. *See Parker v. Colvin*, 2016 U.S. Dist. LEXIS 111863, 2016 WL 4435622 *4 (N.D. Ind. 2016) (remanding where "the ALJ included a single statement that 'the claimant's obesity was considered in relation [to] the musculoskeletal, respiratory, and cardiovascular body systems listings as required by the Ruling' and limited Plaintiff to light work with postural limitations. However, the ALJ did not create a logical bridge from the bare statement that he considered Plaintiff's obesity in combination with other limitations and what specific conclusions he came to regarding the limitations they cause."). The ALJ provided no explanation on how Ms. Haley's obesity factored into the RFC assessment outside the boilerplate language that the ALJ considered her obesity in combination with her other impairments. He should have explained how he reached his conclusion. In not doing so, the court cannot determine whether the ALJ logically considered how Ms. Haley's obesity affected or worsened her other impairments, particularly her EDS and EDS-related pain.

      C.    *Other Appeal Issues.*

Ms. Haley makes several other arguments regarding her mental impairments, physical impairments, the RFC determination, and her ability to perform past relevant work. Given the other reasons for remand, the court need not address these points. Proper analysis of Ms. Haley's subjective symptoms may alter the consideration of her mental impairments, her physical impairments, and the RFC, all of which in turn may alter the finding she could perform her past relevant work. Proper consideration of her obesity in combination with her other impairments likewise may alter the ALJ's consideration of her other physical impairments and the RFC determination. Of course, the court offers this explanation only to explain this opinion's scope, not to direct or indicate a result. Weighing the evidence by means of a logical explanation is left to the ALJ.

CONCLUSION

For these reasons, the court GRANTS Ms. Haley's request for remand and REMANDS the

Commissioner's decision.

SO ORDERED.

August 4, 2021                           *s/ Damon R. Leichty*
                                         Judge, United States District Court